## ADAMS *vs.* McMICHAEL.

[DETINUE FOR SLAVES.]

1. *Gift of slaves for life, with void remainder over, in Georgia.*—By the laws of Georgia, as proved in this case, where there is a parol gift of slaves for life, with void remainder over, the absolute property vests in the tenant for life, and does not revert on his death to the donor.

APPEAL from the Circuit Court of Butler. Tried before the Hon. NAT. COOK.

THIS action was brought by Shadrach McMichael, against Samuel Adams, to recover the possession of several slaves, which the defendant held and claimed as the administrator of one John T. Henderson, deceased ; and was commenced in March, 1860, after the decision of this court had been made in the case of *Henderson v. Adams*, (35 Ala. 723,) in which the title to the same slaves was involved. It appeared from the evidence adduced on the trial, (all of which is set out in the bill of exceptions,) that the slaves, in November, 1852, belonged to the plaintiff, and were in his possession, in Jasper county, Georgia, where he resided ;

that Mrs. Lucinda Henderson, who was the wife of the defendant's intestate, and a daughter of the plaintiff, was at that time, with her said husband, at the plaintiff's house on a visit; that the plaintiff called up the slaves, and said to Mrs. Henderson, in the presence of her husband, "I give you these negroes for your life, and at your death to your children, except Louisa, who is to go to Shadrach Henderson," and, at the same time, delivered the slaves to her; that the slaves were soon afterwards brought by Mr. and Mrs. Henderson, on their return, to this State, and continued in their possession until the death of said Henderson, when they passed into the possession of the defendant, as his administrator; and that Mrs. Henderson survived her husband a few months, but died before the commencement of this suit. Each party read in evidence several decisions of the supreme court of Georgia, which are cited in the briefs of their respective counsel; and it was agreed, that these decisions might be read in this court, as a part of the bill of exceptions. "On this proof, the court charged the jury, that, if they believed the evidence, the plaintiff was entitled to recover"; to which charge the defendant excepted, and which he now assigns as error.

ADAMS & HERBERT, for the appellant, cited *Yarborough v. West*, 10 Geo. 471; *Kirkpatrick v. Davidson*, 2 Kelly, 297; *Maxwell v. Harrison*, 8 Geo. 61; *Duncan v. Bryant*, 10 Geo.; *Carr v. Green*, 2 McCord, 75; *Hinson v. Pickett*, 1 Hill's Ch. 35.

WATTS, JUDGE & JACKSON, *contra*, cited Keyes on Chattels, §§ 276, 278, 279, 280, 281; *Birthright v. Hare*, 3 Munford, 536; *Booth v. Terrell*, 16 Geo. 20.

R. W. WALKER, J.——It was decided by this court, at the term before the last, in a case brought by the children of Mrs. Henderson to recover these slaves, that the remainder to them was, according to the law of Georgia, void. *Adams v. Henderson*, 35 Ala. 723. The question now pre-

sented is, did these slaves revert to the donor, on the death of his daughter, Mrs. Henderson ?

If we were at liberty to decide this question according to our own convictions of what the law should be, we might, perhaps, hold that, the remainder which the donor sought to create being void *ab initio*, the slaves reverted to him by operation of law. Keyes, in his work on Chattels, lays down the doctrine, that *quasi* reversions of chattels personal exist in all cases, both at law and in equity, in which partial interests alone are created in them ; and in all cases in which partial interests are created, with limitations over which fail to take effect, or which are void *ab initio*, or which subsequently become void. And he says, that the operation of this rule is not prevented by the fact, that there is a manifest intention on the part of the donor to dispose of the whole interest ; unless, indeed, the conditional limitations which are originally void, or fail to take effect, are engrafted upon interests in the first takers, which, in the absence of such conditional limitations, would be held to be absolute interests.—Keyes on Chatt. §§ 275-6, 280-1. This opinion seems to be sustained by adjudged cases, both in England and the United States.—*Brown v. Kelsey,* 2 Cushing, 243 ; *Cresswell v. Emberson,* 6 Ired. Eq. 151 ; *James v. Masters,* 3 Murphy, 110 ; *Green v. Ward,* 1 Russ. 262 ; *Andree v. Ward, ib.* 260. See, also, *Geiger v. Brown,* 4 McCord, 427-8.

On the other hand, respectable authorities maintain the proposition, that where the donor of a chattel manifests an intention to part with his whole interest, if the limitation over is either originally void, or incapable of vesting when the contingency happens, the whole interest vests in the first taker.—*Powell v. Brown,* 1 Bailey, 100 ; *Harris v. McLaran,* 30 Miss. 533, (570, 573.).

But we are not at liberty, in the present case, to inquire which of these rules is best supported by reason and good sense. The gift was made in Georgia, and the rights of the parties to this controversy must be determined by the law of that State.

In *Yarborough v. West*, (10 Geo. 471,) it appeared that
John Wingo had made a parol gift of a slave to his daugh-
ter, Jincy West, during her life, with remainder to her chil-
dren ; and that after the death of Jincy West, her hus-
band, John West, promised the donor, Wingo, that he would
hold the slave in trust for her children.   West afterwards
sold the slave, and the children filed a bill in equity against
him, to recover the value of the property.   The court held,
that the parol remainder to the children was void ; and, in
answer to the argument, that they were entitled to recover
upon the promise which John West made after the death
of his wife, used this language :. "But it is further insisted,
that notwithstanding this limitation over to the children of
Jincy West, by the parol gift of John Wingo, may be void
as to them ; yet it is alleged, that after the death of Jincy
West, John West, her husband, most faithfully promised
John Wingo, (who demanded the possession of the slave
Peter, for the children of his daughter Jincy, by virtue of·
said gift,) that he would hold and manage the said boy
Peter in *trust* for the benefit and use of the said children.
By the *parol gift*, the title to the slave Peter vested in Jincy
West, the wife of John West, and, consequently, became
the property of her husband, by virtue of his marital rights;
the gift being by *parol*, no interest in the slave Peter vested
in the children, who were the persons to take in *remainder*
under that parol gift.   Supposing John West to have been
fully cognizant of his legal rights at the time of the alleged
promise made by him to John Wingo, in regard to the slave
Peter, yet there was no consideration to support the
promise ; *the title to the property was already vested in him
by law, and was not at that time either in John Wingo*, or the
children, according to the judgment of the court in *Kirk-
patrick v. Davidson.*. In order to raise a trust by the agree-
ment· of a party, which a court of equity will execute, it
must be founded on some meritorious or some valuable
consideration.—2 Story's Eq. 235, § 973.   The only con-
sideration which we can discover, to support the alleged
promise or agreement, is, that West should have the privi-

lege of retaining the possession of his own property."

Accepting this decision as a correct exposition of the rule of law which prevails in Georgia, we must hold, that the effect of the gift which was made in this case was to vest the absolute interest in the slaves in Lucinda Henderson; and that, by virtue of his marital rights, they became the property of her husband, and did not, on her death, revert to the donor.

Judgment reversed, and cause remanded.